# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| RENARD T. POLK,<br><br>      Plaintiff,<br><br>v.<br><br>TARA CARPENTER, *et al.,*<br><br>      Defendants. | 3:16-cv-00652-MMD-CBC<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE**[1] |

This case involves a civil rights action filed by Plaintiff Renard T. Polk ("Polk") against various defendants who are known, and in some cases unknown, current and/or former employees of the Nevada Department of Corrections ("NDOC"). Currently pending before the court is Defendant James Donnelly's ("Donnelly") motion for summary judgment (ECF No. 103). Polk opposed (ECF Nos. 112/113)[2], and Donnelly replied (ECF No. 118). Also before the court are two motions for pretrial conference (ECF Nos. 121, 134), to which Donnelly responded (ECF No. 123). Polk also filed a notice of supplemental motion for a pretrial conference (ECF No. 124), to which Donnelly responded (ECF No. 128). For the reasons stated below, the court recommends that Donnelly's motion for summary judgment (ECF No. 103) be granted, and the motions for pretrial conference (ECF Nos. 121, 134) be denied as moot.

## I. BACKGROUND AND PROCEDURAL HISTORY

Polk is currently in the custody of NDOC. On November 9, 2016, Polk submitted a civil rights complaint pursuant to 42 U.S.C. § 1983 together with an application to proceed *in forma pauperis*. In the complaint, Polk asserted various claims against multiple

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] ECF Nos. 112 and 113 are identical documents.

defendants for events that took place at Lovelock Correctional Center ("LCC") and Ely State Prison ("ESP") in approximately 2015. (ECF No. 1-1 at 1). Pursuant to 28 U.S.C. § 1915A(a), the court screened Polk's complaint on October 2, 2017. (ECF No. 15). The court allowed Polk to proceed on the following causes of action: (1) the retaliation claim against defendants Ranaldo Waldo and Donnelly contained in Count I; and, (2) the deliberate indifference claim against defendants John and Jane Doe contained in Count III.[3] (ECF No. 15.)

In Count I, Polk asserts he "was attempting to utilize the state prison grievance system and judicial process in order to rectify various illegalities being perpetrated." (*Id.* at 5.) Certain prison staff knew of Polk's use of the grievance process and began to harass, retaliate, and exploit Plaintiff through an ineffective remedial process. (*Id.*) According to the complaint, Polk is often referred to as a "writ writer" or "litigious" and was deemed "problematic" or "incorrigible" for filing grievances. He asserts this directly impacted his employment opportunities while being incarcerated. (*Id.* at 5-6.)

In his complaint, Polk claims that on April 1, 2015, upon entering the cafeteria at LCC, he was approached by Waldo who requested that Polk "tuck in [his] shirt." (*Id.* at 6.) Polk replied that "[his] shirt is tucked in. So why are you harassing me?" (*Id.*) This prompted Donnelly to examine Plaintiff and determine Plaintiff's shirt was not "tucked in." (*Id.*) As a result, Polk was handcuffed and sent to solitary confinement rather than being sent back to his unit. (*Id.* at 6-7.) Polk alleges Defendants Waldo and Donnelly acted in an exaggerated manner because of lawsuits Plaintiff had filed against them. (*Id.* at 7.) In addition, he claims Defendants Waldo and Donnelly fabricated and falsely accused Plaintiff of disciplinary infractions to justify his placement in solitary confinement (administrative segregation). (*Id.*)

On April 16, 2018, Defendants filed a motion for summary judgment arguing that

---

[3]   This court has recommended in a concurrently filed Report and Recommendation that the Count III deliberate indifference claim be dismissed for Polk's failure to identify Doe Defendants.

2

1  Polk failed to exhaust his administrative remedies as required by the Prison Litigation
2  Reform Act ("PLRA") with respect to the allegations in the first cause of action. (ECF No.
3  34). This court recommended that the Defendants' motion for summary judgment be
4  denied because Defendants failed to meet their burden to show Polk failed to exhaust as
5  a matter of law based on the undisputed facts. (*See* ECF No. 52). Specifically, this court
6  found Defendants failed to establish Polk never grieved his First Amendment retaliation
7  claim because Defendants supported their Motion with incomplete information about
8  Polk's grievances. (*Id.*) Thus, the court could not verify that Polk had never grieved—and
9  therefore failed to exhaust—his First Amendment retaliation claim because the court could
10 not read all of his grievances. (*Id.*) The District Court adopted and accepted the Report
11 and Recommendation, and accordingly denied the Defendants' motion for summary
12 judgment. (*See* ECF No. 62).

13      Following the District Court's order denying Defendants' motion for summary
14 judgment, Polk filed a partial motion for summary judgment based upon the premise that
15 because the Court denied Defendants' motion for summary judgment, there were no
16 uncontested genuine issues of material fact in this case. (ECF No. 63). This court
17 recommended that Polk's motion be denied because genuine issues of material fact as to
18 Defendant's exhaustion defense still existed. (ECF No. 93.) The District Court adopted
19 and accepted the Report and Recommendation, and accordingly denied Polk's motion for
20 summary judgment. (*See* ECF No. 116.)

21      After the close of discovery, Donnelly filed his motion for summary judgment (ECF
22 No. 103) arguing he is entitled to summary judgment based on: (1) Polk's failure to file his
23 complaint within Nevada's statute of limitations period; (2) Polk's failure to properly
24 exhaust his available administrative remedies; (3) Polk's inability to prove Donnelly
25 retaliated against him because Donnelly was not involved with Polk's disciplinary notice
26 or actions; and (4) Donnelly is entitled to qualified immunity. (ECF No. 103.)
27 ///
28

## II. LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763

F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**III.   DISCUSSION**

    **A.   Statute of Limitations**

Donnelly moves for dismissal of the complaint on the basis that Polk's First Amendment retaliation claim is barred by the two-year statute of limitations applicable to claims brought under 42 U.S.C. § 1983. (ECF No. 103 at 7-9.)

Since 42 U.S.C. § 1983 contains no statute of limitations, federal courts apply the forum state's statute of limitations for personal injury claims to determine whether a complaint is timely filed. *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000).

Therefore, in Nevada, the statute of limitations for section 1983 actions is two years. *See* Nev. Rev. Stat. § 11.190(4)(e); *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989), *cert. denied*, 493 U.S. 860 (1989).  Under the applicable statute of limitations, Polk had two years from the time of the alleged injury to commence the instance suit. *Id.* An action is deemed to be commenced when the complaint is filed. *Id.*

In his complaint, Polk initially alleged the incident with Defendants Donnelly and Waldo occurred on April 1, 2015. (*See* ECF No. 16 at 5-7.)  However, Donnelly asserts that the incident alleged in the complaint actually occurred on November 7, 2013. (*See* ECF No. 103 at 7-9.)  As support, Donnelly provides Incident Report 2013-LCC-000967 (ECF No. 103-8), in which Donnelly details the following:

> On 7 Nov 2013, I, Sergeant Donnelly, was supervising breakfast at the phase II dinning (sic) hall, Lovelock Correctional Center. At approximately 6:45 am, I observed Senior Officer Waldo ask Inmate Polk, R. #72439, to tuck in his shirt. Inmate Polk refused several orders to tuck in his shirt prior to entering the dinning (sic) hall. Polk continued to enter the Chow hall while laughing at Senior Officer Waldo and stating that his shirt was tucked in. Senior Officer Waldo, after several requests to tuck in his shirt, ordered Polk to face the wall and to submit to restraints. Polk refused and Senior Waldo asked me for assistance.
>
> I, Sergeant Donnelly asked Polk to step outside the Chow Hall so we could discuss the issue. Polk agreed and when outside I asked him to please comply with Senior Officer Waldo['s] orders to tuck in his shirt which is a posted Culinary procedure to help eliminate the introduction of contraband. I asked Polk several more times to tuck in his shirt and he refused stating that it was already tucked in and just laughed. I asked one more time to apologize to Senior Waldo, tuck in his shirt and go have his Breakfast.
>
> Polk refused so I ordered him to face the wall and submit to restraints, he refused so I had the other Feeding Officer Main step out side (sic). Polk faced the wall and I had Officer Main place Polk in restraints and have him escorted to Operations.

(ECF No. 103-8 at 5-6.)  Defendant Waldo provides a similar narrative in the incident report.[4]  (*See* ECF No. 103-8 at 7-8.)

---

[4] The court notes that the incident described in the Incident Report on November 7, 2013, is very similar to the incident described in the complaint. (*Compare* ECF No. 103-8 at, *with* ECF No. 16 at 6.)

6

1  Polk was served with a notice of charges for the incident on November 8, 2013.
2  (ECF No. 103-9.) The preliminary hearing was held on the same day, and the disciplinary
3  hearing was held on December 12, 2013. (*Id.* at 3-8.) On December 20, 2013, Polk filed
4  a disciplinary appeal form related to the disciplinary hearing, but he did not sign the
5  informal appeal form. (ECF No. 103-10.) Thus, the appeal form was denied, and Polk was
6  instructed to correct the signature and refile the form, which he did not do, thus completing
7  the appeals process on December 20, 2013. (ECF No. 103-10; 103-11 at 23.)

8  In opposition, Polk argues that Defendants have waived their statute of limitations
9  defense because they did not assert it prior to filing an answer and a summary judgment
10 motion.[5] (ECF No. 113 at 3.) Next, Polk acknowledges that the November 7, 2013
11 incident occurred, but asserts that his complaint is related to a similar incident with the
12 same defendants that occurred on April 1, 2015. (*Id.* at 4.) However, Polk provides no
13 evidence or documentation that this later incident occurred beyond statements made in
14 his opposition.

15 However, Polk also asserts that even if he was referring to the events that occurred
16 on November 7, 2013, he is still technically within the time frame to file a "grievance
17 internal disciplinary appeal" six years later due to "fraudulent concealment, judicial
18 deception, and implied equitable tolling provided by Administrative Regulations ("AR")
19 740.03. (*Id.* at 5.) Polk then claims that even though his complaint does not reference the
20 incident that occurred on November 7, 2013, it was not the last time similar retaliatory
21 incidents took place with the same defendants. (*Id.* at 6.) Polk reasserts that defendants
22 have waived the statute of limitation defense and there is a four-year statute of limitations
23 period in relation to "unauthorized intentional serious physical personal injury torts" in
24 Nevada. (*Id.* at 6-7.)

---

[5] Fed. R. Civ. P. 8(b) and (c) requires a defendant to plead affirmative defenses in their answer. The court finds Defendants properly plead the statute of limitations defense in their answer, and therefore the defense is not waived. (*See* ECF No. 64 at 10.)

7

1  While Polk makes numerous arguments about why the statute of limitations should not apply or should be different than the standard two-year statute of limitations for section 1983 claims, Polk seems to acknowledge that the initial incident did occur on November 7, 2013 and not April 1, 2015 as stated in the complaint. (*See* ECF No. 113 at 8.) Moreover, Polk provides no evidence in opposition to the Motion for Summary Judgment to support his assertion that the events took place on this later date. Therefore, based on all of the evidence before the court and Polk's own acknowledgment, the court finds that the incident with Defendants Donnelly and Waldo actually occurred on November 7, 2013, not April 1, 2015, as alleged in the complaint. Therefore, Polk knew or had reason to know of the injury on November 7, 2013. *See Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). Because Polk initiated an appeal related to the incident, the statute of limitations began running on December 20, 2013, and the statute of limitations provided Polk until December 20, 2015 to file his claim. Polk filed his initial complaint on November 9, 2016. (ECF No. 1-1). Thus, Polk missed the deadline to file his complaint by more than 10 months.[6]

While Polk appears to argue that equitable tolling should be applied to his claim, the court is not persuaded that equitable tolling is appropriate. Because Polk has presented no evidence that he was diligently pursuing his First Amendment retaliation claim against Defendants Donnelly and Waldo or that some unusual or extraordinary circumstance prevented him from timely filing his compliant, equitable tolling is not appropriate.[7] *See Wallace v. Kato*, 549 U.S. 384, 396 ("Equitable tolling is a rare remedy

---

[6]   Even assuming the events alleged in the complaint did occur on April 1, 2015, as discussed more fully below, Polk provides no evidence that he properly exhausted his administrative remedies as required under the PLRA, as it does not appear Polk filed a grievance specifically related to the alleged incident with Donnelly and Waldo <u>on any date</u>. (*See* ECF No. 103-11.)

[7]   Polk provides a letter from the NDOC dated January 23, 2014, which he purports shows he was relying on a third party to complain about Defendant Donnelly's actions on November 7, 2013. (ECF No. 113 at 14.) However, the letter merely states an issue was sent to the Inspector General's Office. (*Id.*) The letter does not state what the issue was,

to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs."); *see also Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999) (Equitable tolling is warranted "when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time"). Therefore, based on the applicable two-year statute of limitations, Polk's alleged injuries are time-barred. Accordingly, Donnelly's motion for summary judgment should be granted.

### B.  Failure to Exhaust Administrative Remedies[8]

In addition to arguing that Polk failed to file his complaint within the applicable statute of limitations, Donnelly also argues Polk did not properly exhaust his available administrative remedies. (ECF No. 103 at 9-19.)

#### 1.  Exhaustion under the PLRA

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524–25.

---

who it relates to, etc. Thus, Polk has not presented evidence that he was actively pursuing his First Amendment retaliation claim against Defendants.

[8] The Defendant's first motion for summary judgment was also based on a failure to exhaust administrative remedies. (ECF No. 34.) The Court denied the motion based in part on Defendants failure to provide a complete copy of Polk's grievance history. (ECF Nos. 52, 62). Here, Defendant provides a complete copy of Polk's grievance history and copies of pertinent grievances for the court's review. (*See* ECF Nos. 103-3, 103-4, 103-5, 103-10, 103-11, 103-14, 103-15, 103-16, 103-17, 103-18, 103-19, 103-20, 103-21, 103-22.)

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90). Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91.

In the Ninth Circuit, a motion for summary judgment will typically be the appropriate vehicle to determine whether an inmate has properly exhausted his or her administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166. The question of exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id.* at 1170.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino*, 747 F.3d at 1172. If the defendant makes such a showing, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

### 2.  NDOC's Inmate Grievance System

Administrative Regulation ("AR") 740 governs the grievance process at NDOC institutions. An inmate must grieve through all three levels: (1) Informal; (2) First Level; and (3) Second Level. (*See generally* ECF No. 103-12.) The inmate may file an informal

grievance within six months "if the issue involves personal property damages or loss, personal injury, medical claims or any other tort claims, including civil rights claims." (*Id.* at 6.) The inmate's failure to submit the informal grievance within this period "shall constitute abandonment of the inmate's claim at this, and all subsequent levels." (*Id.*) NDOC staff is required to respond within forty-five days. (*Id.* at 7.) An inmate who is dissatisfied with the informal response may appeal to the formal level within five days. (*Id.*)

At the first formal level, the inmate must "provide a signed, sworn declaration of facts that form the basis for a claim that the informal response is incorrect," and attach "[a]ny additional relevant documentation." (*Id.*) The grievance is reviewed by an official of a higher level, who has forty-five days to respond. (*Id.* at 8.) Within five days of receiving a dissatisfactory first-level response, the inmate may appeal to the second level, which is subject to still-higher review. (*Id.*) Officials are to respond to a second-level grievance within sixty days, specifying the decision and the reasons the decision was reached. (*Id.*) Once an inmate receives a response to the second-level grievance, he or she is considered to have exhausted available administrative remedies and may pursue civil rights litigation in federal court.

### 3. Exhaustion of Polk's Claims

Polk's claims against Defendants arise from an incident in the LCC cafeteria where he was confronted about not having his shirt tucked in, failed to comply with officers, and was handcuffed and sent to solitary confinement. (ECF No. 16.) Polk asserts he was later transferred from LCC to ESP in an act of alleged retaliation. (*Id.*) Donnelly argues that Polk did not properly exhaust his available administrative remedies, as he failed to follow the grievance procedure outlined by AR 740. (*See* ECF No. 103.) Specifically, Donnelly contends that Polk failed to file <u>any</u> grievance related to the allegations in the complaint. (*Id.*)

As discussed above, the court finds that the events alleged in the complaint

occurred on November 7, 2013. However, even if the incident did occur on April 1, 2015, summary judgment is still proper because Polk's grievance history shows no grievances that relate to the events alleged on either November 7, 2013 or April 1, 2015. (*See* ECF No. 103-11.) As to the November 13, 2013 incident, Polk admits that he did not file a grievance related to the events that took place on this case. (ECF No. 113 at 4-5.) With the respect to the alleged April 1, 2015 incident, here again, there is no evidence in the record that Polk filed a grievance specifically related to the alleged incident with Donnelly and Waldo on this date either. (*See* ECF No. 103-11.)

As such, the burden shifts to Polk "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)). Polk provides no evidence to show that administrative remedies were unavailable to him in relation to the events for either date. Polk instead argues that he has fulfilled the administrative remedies requirements by filing a third-party complaint. (*See* ECF No. 113 at 4, 14.) Polk provides a copy of a letter from the NDOC dated January 23, 2014, which he purports shows he was relying on a third party to complain about Defendant Donnelly's actions on November 7, 2013. (ECF No. 113 at 14.) However, the letter merely states an issue was sent to the Inspector General's Office. (*Id.*) The letter does not state what the issue was, who it relates to, etc. Thus, Polk has not presented evidence that he exhausted his administrative remedies or that his remedies were unavailable.

Exhaustion plays a very important role in both the prison and court settings. "Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures.'" *Woodford v.* Ngo, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan,* 503 U.S. 140, 145 (1992)). Exhaustion also "promotes efficiency." *Id.* Polk does not provide any credible evidence that he exhausted his

administrative remedies and he does not present any evidence that such remedies were effectively "unavailable." Accordingly, the court concludes that Polk failed to exhaust available administrative remedies prior to filing this action, and that Defendant's motion for summary judgment should be granted.[9]

Finally, it should be noted that while Defendant Waldo has been served (ECF No. 132) and has filed a joinder to Defendant Donnelly's answer (ECF No. 133), he has not joined the motion for summary judgment. However, because Polk's claim is barred by the applicable statute of limitations and Polk failed to exhaust his administrative remedies, Polk's complaint should be dismissed in its entirety, including as it relates to Defendant Waldo.

## IV.  MOTIONS FOR PRETRIAL CONFERENCE

On December 26, 2019 and March 24, 2020, Polk filed two motions for pretrial conference (ECF Nos. 121, 134). In light of this Report and Recommendation that Polk's complaint be dismissed, the court recommends that the motions be denied as moot.

## V.  CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends that Donnelly's motion for summary judgment (ECF No. 103) be granted and the motions for pretrial conference (ECF Nos. 121, 134) be denied as moot.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

---

[9] Because the court finds that Polk failed to file his complaint within the applicable statute of limitations period and he failed to exhaust his administrative remedies, the court need not address Defendant's other arguments related to personal participation or qualified immunity.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

**VI. RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Donnelly's motion for summary judgment (ECF No. 103) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the motions for pretrial conference (ECF Nos. 121, 134) be **DENIED AS MOOT**; and

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** accordingly.

**DATED**: April 6, 2020.

_____
**UNITED STATES MAGISTRATE JUDGE**